# EXHIBIT A

**AMERICAN NORTHERN MARIANAS ECONOMIC DEVELOMENT FUND LLC**

**SUBSCRIPTION AGREEMENT**

# TABLE OF CONTENTS

Page

RECITALS:..........................................................................................................................2

AGREEMENT......................................................................................................................6

1.  Subscription.................................................................................................................6

2.  Important Note regarding Parent/Guardian/Custodian Consent of Minor...........................7

3.  Acceptance of Subscription............................................................................................7

4.  Closing........................................................................................................................8

5.  Return of Investment Amount and/or Administration Fee
    upon Rejection or Denial…………………………………………………………….8

6.  Revocation…………………………………………………………………………….8

7.  Representations, Warranties, Covenants and Acknowledgments of the Undersigned........9

8.  Covenants of the Investment Fund..............................................................................16

9.  Covenants of the Subscriber........................................................................................16

10. Transferability............................................................................................................16

11. No Waiver of Rights....................................................................................................16

12. Indemnification..........................................................................................................17

13. Admission as Member…………………………………………………………………17

14. Adoption of Operating Agreement……………………………………………………17

15. Non U.S. Status……………………………………………………………………….17

16. Miscellaneous.............................................................................................................18



Name of Subscriber:   Wei Tianyi

Number of Registration:_____

## SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this "**Agreement**") is made and entered into as of the date shown on the signature page hereof, by the undersigned subscriber (the "**Subscriber**," and, once his or her subscription is accepted by the Company and he/she is admitted to the Company and becomes a Class B member of the Company, identified on the signature page of this Agreement, in favor of American Northern Marianas Economic Development Fund LLC, a New York limited liability company (the "**Company**"), American Northern Marianas Regional Center, LLC, a Commonwealth of the Northern Mariana Islands limited liability company (the "**Manager**"), and if accepted by the Company in writing in accordance with the terms hereof, then this Agreement shall be by and between the Subscriber and the Company. Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Offering Memorandum (defined below).

## RECITALS:

A.    The undersigned acknowledges that the undersigned has received and reviewed a copy of the Confidential Private Placement Memorandum dated July 10, 2022 (the "**Memorandum**"), relating to the private offering by American Northern Marianas Economic Development Fund, LLC, a New York limited liability company (the "**Investment Fund**"), up to a maximum of 226 Class B Units of membership interest in the Investment Fund ("**Unit**" or "**Units**") at a price of US$800,000 per Unit (the "**Offering**"), subject to the Minimum Investment Requirement (as defined in the Memorandum). Certain terms used herein are defined in the Investment Fund's Operating Agreement, the form of which appears as Exhibit B to the Memorandum (the "**Operating Agreement**"). Subscriptions are being offered to a limited number of persons who are either (i) an "accredited investor" as that term is defined in Rule 501(a) of Regulation D promulgated under the US Securities Act of 1933 (the "**Securities Act**") who is acquiring the Class B Units without having been offered or sold the securities by any form of "general solicitation" or "general advertising," each within the meaning of Rule 502 of Regulation D or (ii) a "non-U.S. person" who is acquiring the Class B Units in a "offshore transaction," without having been offered or sold the securities by any form of "directed selling efforts" each within the meaning of Rule 902 of Regulation S under the Securities Act.

B.    The Company has been formed for the purpose of making a loan to Bridge Investment Group LLC, a Commonwealth of the Northern Mariana Islands limited liability company (the "**Borrower**"), in connection with the development (as defined in the Offering Memorandum).

C.    The Company will be managed by the Manager appointed by the Class A Member. American Northern Marianas Regional Center LLC is the Class A Member and has appointed itself as the Manager of the Company.  The principal of the Manager is Erik Wang

3

Initial _____

who is also a principal of the Company and the Borrower (each as defined herein and in the Offering Memorandum). Notwithstanding the foregoing, the Manager shall engage an independent and unaffiliated third-party financial servicer authorized under the EB-5 Reform and Integrity Act of 2022 (defined below) to serve as a "Fund Administrator" (hereinafter, the "**Administrator**"), which shall (to the exclusion of the Manager) be solely responsible for the administration and oversight of the EB-5 investment capital. The Administrator shall be (i) designated as a signatory on the bank account for the Company, and will be required to approve all advances made by the Company to the Borrower under the EB-5 Loan Agreement in an effort to ensure that advances are only made for USCIS permissible uses in the Project.

D.    American Northern Marianas Regional Center LLC, a Commonwealth of the Northern Mariana Islands limited liability company (the "**Regional Center**"), was an approved regional center under the EB-5 program (the "**EB-5 Program**") with the United States Citizenship and Immigration Service ("**USCIS**") authorized under The Immigration Act of 1990 (IMMACT 90), effective November 29, 1990 ("**Immigration Act**"). The Regional Center will authorize foreign investors in the Company to include direct and indirect job creation from the Project toward qualification for the EB-5 Program, and it will be granting the Company the rights to utilize the EB-5 Program to raise capital for the development of the Project.

E.    Pursuant to the EB-5 Reform and Integrity Act of 2022 (the "**Act**" or "**EB-5 Program Rules**") effective as of March 15, 2022 and specifically to the Regional Center Program as of May 14, 2022 ("**Regional Center's Effective Date**"), the Regional may file the Form I-956 if required seeking recertification as a regional center pursuant to USCIS's interpretation of the Act, unless separate guidance is provided by USCIS thereto. In the meantime, the Regional Center has agreed to sponsor the Project for participation in the EB-5 Program pursuant to a Regional Center Affiliation Agreement between the Regional Center, Company and Developer such that the EB-5 Regional Center designation may be used in connection with the Loan and related compliance described herein (the "**Affiliation Agreement**").

F.    Each Subscriber's Capital Contribution and Administrative Fee must be paid either to the Chase Bank account, a New York financial institution (or another financial institution), as escrow agent (the "**Escrow Agent**"), or to the Chase Bank account, a New York financial institution (or another financial institution), designated as the segregated EB-5 account in which the fund administrator is a co-signatory, by wire transfer upon subscription for a Unit, as more fully described below.

G.    The Capital Contribution and Administrative Fee of each Subscriber will be paid either to the Escrow Agent or to the segregated EB-5 account of the Company by wire transfer upon subscription for a Unit. If the funds are to be held in escrow by the Escrow Agent in an Escrow Account, then the funds will be held pursuant to the terms of the Operating Agreement and the Escrow Agreement entered into between the Company, Manager (as the Subscribers' representative), Administrator and Escrow Agent; provided, however, that the Company, Manager, and Administrator shall not cause the Escrow Agent to transfer any part or all of the Subscriber's Capital Contribution to the segregated EB-5

4

Initial _____

account of the Company for purposes of funding the EB-5 Loan to the Borrower unless and until satisfaction of the following release conditions (the "**Release Conditions**"):

(i)        any one or all of the following conditions within this romanette (i) have been satisfied: (a) the regional center application that is associated with the Offering (including, but not limited to, an application for re-authorization under Form I-956) has been approved by USCIS and remains in good standing, or (b) USCIS has issued a publication or a court of competent jurisdiction has issued a legal judgement, which resolves the restrictions imposed on regional centers by the Policy Release, including but not limited to (1) declaring the sufficiency of the Form I-956 filing as a prerequisite for I-526E Petition filing, or (2) declaring that all previously approved regional centers, including the one associated with the Offering, are in good standing without need for such Form I-956 application filing provided the regional center has not, otherwise, received a Notice of Intent to Deny that has not yet been remediated by a USCIS reaffirmation notice;

(ii)        the I-956F exemplar application for the Offering has been filed by the Regional Center (as evidenced by proof of filing of the same); and

(iii)        the I-526E Petition for the applicable Subscriber has been filed with USCIS (as evidenced by (A) an I-797C Notice of Action issued by USCIS and indicating the I-526E Petition has been received (the "**I-797C Filing Notice**"), or (B) a letter from such Subscriber's immigration counsel which (1) includes the name of the Subscriber, states that the Subscriber's I- 526E Petition has been submitted to USCIS, and includes the date the petition was filed and (2) either includes the "WAC receipt number" assigned to the Subscriber by USCIS if such is available from the cashed check image or evidence of a credit card debit by USCIS accompanied by the applicable G-1450 form, indicating that the Subscriber's I-526E Petition has been received in lieu of the I-797C Filing Notice) (in any case, the "**I-526E Petition Filing Evidence**").

H.        In the event that a Subscriber's Administrative Fee is deposited into the Escrow Account and not deposited directly into the bank account of the Regional Center, the Administrative Fee will be released by the Escrow Agent to the Regional Center upon satisfaction of the above Release Conditions.

I.        See Section 7 of the Operating Agreement for provisions regarding the denial of a Subscriber's I-526E Petition and the withdrawal of a Subscriber as an investor and Class B Member in the Company, which provisions are incorporated herein by reference and made a part hereof.

J.        The Company shall include together with the Subscription Agreement an addendum thereto for a Subscriber's execution for purposes of such Subscriber acknowledging the compensation paid to certain parties in connection with this Offering, as required by the EB-5 Program Rules.

Initial

**AGREEMENT:**

      1.      <u>Subscription</u>. Subject to the terms and conditions contained herein and in the Memorandum, the undersigned hereby subscribes for and, if such subscription is accepted by the Investment Fund, shall purchase Unit(s) for the total amount set forth on the signature page hereto ("**Investment Amount**"). The undersigned tenders herewith:

      a.  a certified check, cashier's check, personal check or wire transfer in the sum of the Investment Amount, which Investment Amount shall be deposited with either (X) the third party escrow agent ("**Escrow Agent**") designated by American Northern Marianas Regional Center, LLC ("**Regional Center**") or (Y) the segregated EB-5 bank account of the Investment Fund;

      b.  a certified check, cashier's check, personal check or wire transfer in the sum of US$80,000, representing the administration fee of ("**Administration Fee**"), which shall paid to the account of the Regional Center;

      c.  the Escrow Agreement for the Offering in the form previously provided to the undersigned if the undersigned is depositing the Investment Amount with the Escrow Agent rather than directly with the Investment Fund (such documents (a) – (c), together with this Subscription Agreement, the "**Subscription Documents**").

      Upon acceptance of the subscription by the Investment Fund, either (X) the Escrow Agent will release the Investment Amount to the Investment Fund upon (i) receipt by the Escrow Agent of the undersigned's cleared funds in the amount of the full Investment Amount and the receipt by the Regional Center of the Administration Fee, (iii) the undersigned having filed his or her I-526E Petition with the United States Citizenship and Immigration Services ("**USCIS**"), which may be evidenced by Form I-797 Notice of Action issued by USCIS evidencing receipt of such undersigned's I-526E Petition or any other method reasonably acceptable to the Escrow Agent and (iv) the Investment Fund has provided Escrow Agent with written directions setting forth appropriate wire transfer instructions; or (Y) if the undersigned paid the Investment Amount directly to the Investment Fund, the Investment Amount will become immediately available for use by the Investment Fund in accordance with the release provisions set forth in the Fund Administration Agreement, if applicable, and the terms of EB-5 Loan Agreement, in each case pursuant to a closing of the sale of the Unit(s) by the Investment Fund to the undersigned pursuant to Section 3. The undersigned understands and agrees that any subscription may be accepted or rejected by the Investment Fund in the sole and absolute discretion of the Investment Fund. If this subscription is rejected, this subscription shall be rendered void and shall have no further force or effect.

      If the undersigned remits the Investment Amount to the <u>Investment Fund</u> by wire transfer, it should remit it as follows:

Initial _WTY_

JPMorgan Chase Bank, N.A.
180 Canal Street New York, NY 10013-4514 USA
ABA Number: 021000021
Account #: 866373886
SWIFT Code: CHASUS33
Account Name: American Northern Marianas Economic Development Fund, LLC

To confirm receipt of the wire please contact:

American Northern Marianas Economic Development Fund, LLC
P.O. Box 520199
Tinian, MP 96952 USA
Attention: Erik F. Wang
Erik.F.Wang@gmail.com

2.    Important Note regarding Parent/Guardian/Custodian Consent of Minor. To the extent that the Subscriber who is funding subscription proceeds directly, is a minor child under applicable law (usually 18 years old) (a "**Minor**" or "**Minor Subscriber**"), a signature of the Subscriber's parent (the "**Parent**") or legal guardian (the "**Guardian**") must co-sign all subscription documents in order to validate the same under the Delaware Uniform Transfer to Minors Act (UTMA).

In the event that the Minor Subscriber's subscription proceeds are paid from a bank account whereby the Custodian (as defined under the applicable law of the jurisdiction provided for in the offering documents) gifted such funds to the Minor Subscriber under a custodial account, then the payment must be accompanied by an appropriate gift affidavit or similar document from the Custodian, and the Custodian must co-sign the Subscription Agreement and Operating Agreement in order to validate the subscription documents.

Although the Company will accept subscriptions by a Minor Subscriber that conform to these instructions, all Minor Subscribers and their Parents, Guardians or Custodians should speak to their U.S. immigration counsel regarding compliance with USCIS evidentiary requirements.

3.    Acceptance of Subscription. The undersigned understands and agrees that this subscription is made subject to the following terms and conditions:

(a)    prior to the closing of this subscription, the Investment Fund has the right to reject this subscription for any reason or no reason at all and the Investment Fund will notify you within fourteen days of receipt of (i) the executed Subscription Documents and (ii) your completed draft I-526E Petition if your subscription is accepted or rejected;

(b)    the Investment Fund has the right to terminate the Offering, in its sole and absolute discretion; provided, however, that such cancellation shall not affect this subscription after the closing of this subscription;

(c)    the Investment Fund shall accept suitable subscriptions in the order

7

Initial _____

received;

(d)    acceptance of any subscription by the Investment Fund is contingent on payment of the Investment Amount and the Administration Fee in immediately available funds; and

(e)    the documents to be issued and delivered on account of this subscription will be issued only in the name of and delivered only to the undersigned.

4.    <u>Closing</u>. The closing of the sale of the Units by the Investment Fund to the undersigned pursuant to the Offering will occur, if at all, upon acceptance by the Investment Fund of the undersigned's cleared funds, either from the undersigned or the Escrow Agent, representing Investment Amount, and acceptance by the Regional Center of cleared funds representing the Administration Fee.

5.    <u>Return of Investment Amount and/or Administration Fee upon Rejection or Denial</u>.

(a)    If this subscription shall have been rejected or the Offering (in its entirety) shall have been terminated by the Investment Fund, any Unit(s) purchased by the undersigned shall be repurchased by the Investment Fund at a price equal to the sum of the Investment Amount (without interest) and the Administration Fee (without interest) shall be reimbursed by the Regional Center.

(b)    If the undersigned's Form I-526E Petition shall have been denied pursuant to a written decision of the USCIS for any reason that cannot be readily remedied provided that the undersigned (x) has re-filed his or her I-526E Petition and/or has exhausted all administrative remedies and (y) provides evidence reasonably satisfactory to the Investment Fund regarding the denial of approval, any Unit(s) purchased by the undersigned shall be repurchased by the Investment Fund at a price equal to the Investment Amount (without interest), subject to the undersigned's delivery of evidence reasonably satisfactory to the Investment Fund regarding the denial of approval, as applicable, provided that under no circumstances shall the undersigned liquidate his or her Units within 12 months after such person has been admitted as Class B Member. In the case of a repurchase pursuant to this Section 5(b), the Regional Center shall have the sole discretion to keep any or all of the Administration Fee as compensation for processing the undersigned's Subscription Documents.

(c)    If the undersigned fails to obtain conditional permanent resident status under the EB-5 program after his or her Form I-526E Petition has been approved any Unit(s) purchased by the undersigned shall be repurchased by the Investment Fund at a price equal to the Investment Amount (without interest) as determined by the Investment Fund at its sole discretion. In the case of a repurchase pursuant to this Section 5(c), the Regional Center shall have the sole discretion to keep any or all of the Administration Fee as compensation for processing the undersigned's Subscription Documents.

6.    <u>Revocation</u>. Upon the acceptance of this subscription by the Investment

8

Initial _____

Fund, this subscription may not be cancelled, terminated or revoked by the undersigned; provided, however, that if the Minimum Investment Requirement under the EB-5 program increases to greater than US$800,000 prior to the filing of the undersigned's Form I-526 Petition and remains greater than US$800,000 for a period of 60 days thereafter, the undersigned shall have the right to revoke this subscription by delivering written notice of revocation to the Investment Fund within five days of the end of said 60-day period. In the event the undersigned fails to exercise such revocation right as provided under this Section 6, the undersigned shall remit to the Investment Fund such additional funds necessary to satisfy the Minimum Investment Requirement, which additional funds shall constitute a part of the Investment Amount. In the event the undersigned revokes this subscription pursuant to this Section, any Unit(s) purchased by the undersigned shall be repurchased by the Investment Fund at a price equal to the Investment Amount (without interest), provided that under no circumstances shall the undersigned liquidate his or her Units within 12 months after such person has been admitted as Class B Member. In the case of a repurchase pursuant to this Section 5, the Regional Center shall have the sole discretion to keep any or all of the Administration Fee as compensation for processing the undersigned's Subscription Documents.

       7.    <u>Representations, Warranties, Covenants and Acknowledgments of the Undersigned</u>. The undersigned represents, warrants, covenants and acknowledges as follows:

       (a)    The undersigned is a bona fide resident, domiciliary and citizen of the country or countries set forth on the signature page hereof.

       (b)    The undersigned represents and warrants that the undersigned reads and understands English or has had this Subscription Agreement, the Memorandum, the Operating Agreement, and any other documents translated to a language in which the Subscriber is competent for the Subscriber's convenience. The English language text and American usage thereof shall control the interpretation and construction of this Agreement and all other writings between the parties.

       (c)    The undersigned understands and acknowledges that: (i) the USCIS has sole and absolute discretion with respect to the granting of conditional or unconditional permanent residency in the United States under the EB-5 immigrant investor visa program and may deny a Form I-526E Petition or a Form I-829 Petition by Entrepreneur to Remove Conditions ("**Form I-829 Petition**") for any reason; (ii) the U.S. consulates abroad have sole and absolute discretion with respect to the granting of an immigrant visa; (iii) the Investment Fund and its affiliates, managers, officers, employees, consultants, representatives and agents have not made any statement, promise, or representation to the undersigned regarding the likelihood of the undersigned receiving conditional or unconditional permanent residency in the United States; (iv) the undersigned is solely responsible for filing a Form I-526E Petition, applying for conditional permanent residency in the United States, and filing a Form I-829 Petition and the costs and expenses related thereto, including, without limitation, fees and expenses of retaining immigration counsel; and (v) the Investment Fund has no obligation to assist or incur any cost on behalf of the undersigned in connection with any Form I-526E Petition, application for

9

Initial _WT Y_

conditional permanent residency in the United States, or Form I-829 Petition other than to provide information and copies of documents that are in the Investment Fund's possession or can be obtained by the Investment Fund at a nominal expense and that is required by the USCIS in connection with such petition or application.

     (d)    The undersigned understands and acknowledges that the Units have not been and will not be registered with the US Securities and Exchange Commission (the "SEC") under the Securities Act and is aware that the offer to subscribe for the Units is being made in a transaction exempt from such registration requirements pursuant to either Regulation D or Regulation S promulgated thereunder. The undersigned understands and acknowledges that the Units are "restricted securities" within the meaning of Rule 144 under the Securities Act, which rule permits limited resales of securities acquired in a non-public offering, subject to the satisfaction of certain conditions set forth therein.

     (e)    The undersigned is either

        a. an "accredited investor" who is (1) an individual whose net worth[1] together with that of his or her spouse, excluding the value of his or her primary residence, exceeds US$1,000,000; (2) an individual who had income in the two most recent years in excess of US$200,000 individually (or US$300,000 with spouse) and reasonably expects income at that level in the current year, in either case who is acquiring the Class B Units without having been offered or sold the securities by any form of "general solicitation" or "general advertising," within the meaning of Rule 502 of Regulation D; (3) an investment professional in good standing holding the general securities representative license (Series 7), the investment adviser representative license (Series 65), or the private securities offerings representative license (Series 82); (4) a director, executive officer, or general partner (GP) of the company selling the securities (or of a GP of that company); (5) any " family client" of a "family office" that qualifies as an accredited investor; (6) is a knowledgeable employee of the fund; or

        b. a "non-U.S. person" who is acquiring the Class B Units in a "offshore transaction," without having been offered or sold the securities by any form of "directed selling efforts" in the United States each within the meaning of Rule 902 of Regulation S under the Securities Act.

---

[1] "Net Worth" means total assets in excess of total liabilities (excluding the value of your primary residence). In addition, any mortgage or other loan on your primary residence does not count as a liability up to the fair market value of the residence. If the loan is for more than the fair market value of the residence (i.e., if your mortgage is underwater), then the loan amount that is over the fair market value counts as a liability under the net worth test.

Further, any increase in the loan amount in the 60 days prior to your purchase of the Units (even if the loan amount does not exceed the value of the residence) will count as a liability as well. The reason for this is to prevent net worth from being artificially inflated through converting home equity into cash or other assets.

10

Initial _w̲T̲Y̲_

(f)      The undersigned confirms (X) that he or she is an "accredited investor" who has not been offered or sold the Units by any form of "general solicitation" or "general advertising", each as defined in Regulation D under the Securities Act or (Y) that (i) the undersigned is not a U.S. person and is acquiring the Units in an "offshore transaction," without having been offered or sold the Units by any form of "directed selling efforts", each as defined in Regulation S under the Securities Act, and is not acquiring the Units for the account or benefit of any U.S. person, (ii) the undersigned will resell the Units only in accordance with the provisions of Regulation S or pursuant to registration under the Securities Act or an available exemption therefrom, and (iii) the undersigned will not engage in hedging activities with regard to the Units, unless in compliance with the Securities Act.

(g)      The undersigned understands that the undersigned is purchasing the Units without being furnished any offering literature or prospectus other than the Memorandum; that neither this transaction nor the Memorandum been examined or approved by the SEC or by any other governmental authority, including, without limitation, any agency, public or regulatory authority, instrumentality, department, commission, court, ministry, tribunal or board of any government, whether foreign or domestic and whether national, federal, provincial, state, regional, local or municipal ("**Governmental Authority**") and that no such Governmental Authority has made any recommendation or endorsement as to, or otherwise passed on the merits of, purchasing the Units.

(h)      The undersigned agrees that the undersigned shall not make any sale, transfer or other disposition of the Units (or any interest therein) in violation of the Securities Act or the US Securities Exchange Act of 1934 (the "**Exchange Act**"), the applicable securities laws of any applicable US state, any applicable non-US securities laws, or the rules and regulations of the SEC or any securities authority of any US state or other country in which the sale, transfer or disposition may be made, or in violation of any transfer restriction applicable to the Units pursuant to this Subscription Agreement or the Operating Agreement. The undersigned agrees that the undersigned shall not make any sale, transfer or other disposition of all or any portion of the Units (or any interest therein) unless and until: (i) (x) there is then in effect a registration statement under the Securities Act or the securities laws of the applicable jurisdiction covering such sale, transfer or disposition, and such sale, transfer or disposition is made in accordance with such registration statement, or (y) such sale, transfer or disposition is made: (a)(1) to a person whom the seller reasonably believes is a "qualified institutional buyer" in a transaction meeting the requirements of Rule 144A under the Securities Act, (2) outside the United States in accordance with Rule 903 or Rule 904 of Regulation S or (3) pursuant to an exemption from registration under the Securities Act such as provided by Rule 144 thereunder; and (b) in each case in accordance with any applicable securities laws of any state of the United States and applicable non-US securities laws; and (ii) all transfer restrictions applicable to the Units pursuant to this Subscription Agreement and the Operating Agreement and applicable law have been satisfied or are no longer applicable with respect to such sale, transfer or disposition. Upon request by the Investment Fund, the undersigned also shall deliver to the Investment Fund an opinion of counsel, in form and substance satisfactory to the Investment Fund and its counsel, that such proposed sale,

11

Initial _WTY_ 

transfer or disposition is in full compliance with the requirements of this Section 6(i).

(i)     The undersigned understands, acknowledges and agrees that the Investment Fund has no obligation to register, and does not intend to register, the resale of any of the Units under the Securities Act or the laws of any other jurisdiction or country, and that there can be no assurance that any registration statement will be filed with respect to the Units, or, if filed, that such registration statement will become effective. The undersigned acknowledges and agrees that, unless an exemption from the registration requirements under applicable law is available, the undersigned may not be able to resell the units and thus may be required to bear the economic risk of the undersigned's investment for an indefinite period of time.

(j)     The undersigned understands, acknowledges and agrees that, regardless of whether the offering and sale of the Units has been registered under the Securities Act or any other applicable securities laws, the Investment Fund may impose restrictions upon the sale, transfer or disposition of Units (including the placement of appropriate legends on membership certificates or the imposition of stop-transfer instructions) if, in the sole and absolute discretion of the Investment Fund, such restrictions are necessary or desirable: (i) to achieve compliance with the Securities Act, any other securities laws or any other law; or (ii) in light of the transfer and other restrictions set forth in this Subscription Agreement or the Operating Agreement. Without limiting the generality of the foregoing provisions, the undersigned consents to the placement of substantially the following legends on any document representing the Units being purchased by the undersigned:

**"THE MEMBERSHIP INTEREST REPRESENTED HEREBY HAS NOT BEEN REGISTERED WITH THE US SECURITIES AND EXCHANGE COMMISSION PURSUANT TO THE US SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), OR ANY OTHER SECURITIES AUTHORITIES. IT IS BEING OFFERED ONLY TO (i) "ACCREDITED INVESTORS" WITHOUT ANY FORM OF "GENERAL SOLICITATION" OR "GENERAL ADVERTISING", EACH AS DEFINED IN REGULATION D UNDER THE SECURITIES ACT IN RELIANCE UPON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED BY SECTION 4(a)(2) THEREUNDER AND (ii) NON-"U.S. PERSONS" WHO ARE ACQUIRING THE SECURITIES IS AN "OFFSHORE TRANSACTION" WITHOUT HAVING BEEN OFFERED OR SOLD THE SECURITIES BY ANY FORM OF "DIRECTED SELLING EFFORTS", IN EACH CASE WITHIN THE MEANING OF RULE 902 OF REGULATION S UNDER THE SECURITIES ACT. HEDGING TRANSACTIONS INVOLVING THE MEMBERSHIP INTERESTS MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE SECURITIES ACT."**

**"THE MEMBERSHIP INTEREST REPRESENTED HEREBY MAY NOT BE SOLD, ASSIGNED, TRANSFERRED, ENCUMBERED OR IN ANY MANNER DISPOSED OF, EXCEPT IN COMPLIANCE WITH THE**

Initial 

TERMS OF THE WRITTEN OPERATING AGREEMENT BETWEEN THE INVESTMENT FUND AND THE REGISTERED HOLDERS OF THE MEMBERSHIP INTEREST (OR THE PREDECESSOR IN INTEREST TO THE MEMBERSHIP INTEREST). SUCH OPERATING AGREEMENT GRANTS TO THE INVESTMENT FUND AND ITS OTHER MEMBERS CERTAIN REPURCHASE RIGHTS AND RIGHTS OF FIRST REFUSAL TO ACQUIRE SUCH MEMBERSHIP INTEREST. THE SECRETARY OR MANAGER OF THE INVESTMENT FUND WILL UPON WRITTEN REQUEST AT THE INVESTMENT FUND'S PRINCIPAL PLACE OF BUSINESS FURNISH A COPY OF SUCH OPERATING AGREEMENT TO THE HOLDER HEREOF WITHOUT CHARGE."

"THE MEMBERSHIP INTEREST REPRESENTED HEREBY MAY NOT BE OFFERED FOR SALE, SOLD, DELIVERED AFTER SALE, TRANSFERRED, PLEDGED, OR HYPOTHECATED EXCEPT: (A)(i) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN, AND IN A TRANSACTION MEETING THE REQUIREMENTS OF, RULE 144A UNDER THE SECURITIES ACT, (ii) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT SUCH AS PROVIDED BY RULE 144 THEREUNDER OR (iii) OUTSIDE THE UNITED STATES IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S AND (B) IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION, AND UNLESS ACCOMPANIED BY AN OPINION OF COUNSEL SATISFACTORY TO THE INVESTMENT FUND. ANY TRANSFER OF THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS FURTHER SUBJECT TO OTHER RESTRICTIONS, TERMS, AND CONDITIONS WHICH ARE SET FORTH IN THE OPERATING AGREEMENT."

(k)    The undersigned agrees and acknowledges that the undersigned: (i) is not a distributor or dealer of the Units and is not taking the Units with the intent to make a "distribution" of the Units, as such term is defined in the Securities Act; (ii) is acquiring the Units in good faith solely for the undersigned's own personal account for investment purposes and not with a view to resell or for the resale by way of distribution, subdivision, fractionalization or other means; and (iii) has no understanding, agreement or arrangement, formal or informal, existing or intended, to sell or transfer to any person for consideration the Units for which it hereby subscribes or any part thereof.

(l)    The undersigned confirms that the undersigned: (i) is able to bear the economic risk of investment in the Units; (ii) is able to hold the Units for an indefinite period of time such that the undersigned's overall commitment to non-marketable investments (including the undersigned's investment in the Units) is not excessive or disproportionate to his or her net worth; (iii) is presently able to afford a complete loss of the undersigned's investment; and (iv) has adequate means of providing for the

13

Initial _____

undersigned's current needs and possible personal contingencies and has no need for liquidity in the undersigned's investment.

(m)    The undersigned understands and acknowledges that the Investment Fund was organized on May 9, 2014 as a New York limited liability company to engage in any lawful business activity, and as its first endeavor, the Investment Fund intends to make one or more loans on the terms described in the Memorandum to Bridge Investment Group, LLC, a Commonwealth of the Northern Mariana Islands limited liability company. The undersigned agrees and acknowledges that the investment in the Investment Fund as contemplated herein is a speculative investment and involves substantial risks, including the potential loss of the undersigned's entire investment contemplated herein, and the undersigned understands, accepts and assumes all of the risk factors related to the purchase of the Units, including but not limited to those set forth in the Memorandum. The undersigned recognizes that the Memorandum does not purport to contain all the information which would be contained in a registration statement under the Securities Act or under the securities laws of any other jurisdiction.

(n)    The undersigned understands and acknowledges that the Investment Fund has made available to the undersigned all documents, records and books of the Investment Fund pertaining to the investment in the Units and the undersigned's representatives, including the undersigned's attorney, accountant and/or purchaser representative, if any and the undersigned has received and reviewed such information as deemed necessary or appropriate concerning the Investment Fund and the Units and any other matters relevant to the decision to subscribe for the Units as deemed necessary.

(o)    The undersigned has such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks of an investment in the Units, which risks are substantial, and of making an informed investment decision.

(p)    The undersigned confirms that, in making a decision to purchase the Units hereby subscribed for, the undersigned has carefully reviewed the Memorandum and that the undersigned has been given the opportunity to ask questions of and to receive answers from the Investment Fund concerning the information set forth in the Memorandum, and to obtain any additional information which the Investment Fund possesses or can acquire without unreasonable effort or expense as is necessary to verify the accuracy of the information furnished in the Memorandum.

(q)    The undersigned has consulted with and relied completely on the advice of the undersigned's own personal tax, investment, legal or other advisors regarding the tax, investment and legal matters discussed in the Memorandum, including but not limited to the risk factors described therein.

(r)    The undersigned confirms that he or she understands and has fully considered for purposes of this investment that there are substantial legal, contractual and practical restrictions on the transferability of the Units, including but not limited to the right

14

Initial _WTY_

of first refusal and repurchase rights of the Investment Fund and/or its members, and that there will be no public market for the Units, and, accordingly, it probably will not be possible for the undersigned to liquidate the undersigned's investment in the Units in case of an emergency or to use the Units as collateral for a loan.

(s)    If the Investment Fund becomes subject to reporting requirements under the Exchange Act or any other applicable securities laws, the undersigned will provide such information and deliver such documents, within five days after receipt of a request from the Investment Fund, as may reasonably be necessary to comply with any and all laws and ordinances to which the Investment Fund is subject.

(t)    The undersigned understands and acknowledges that no assurance is or has been made regarding any tax advantages which may accrue to an investor in the Units, and that existing tax laws and regulations could be modified in the future, thus denying the investor all or a portion of the tax benefits which may be currently available under existing tax laws and regulations. The undersigned understands and acknowledges that an investment in the Units, as well as conversion, sale or other disposition of the Units, may result in tax consequences under federal, state or other tax laws in the United States or under non-US tax laws. Therefore, the undersigned has made such independent inquiries as the undersigned deems necessary to evaluate properly an investment in the Units, including consultation with a personal tax adviser, to determine whether such investment is appropriate. The undersigned understands and acknowledges that it is the undersigned's sole responsibility, and not the Investment Fund's, to file timely tax returns or any tax election relating to the undersigned's investment, conversion, sale or other disposition of the Units.

(u)    The undersigned confirms that he or she has not been convicted of any crime or been sanctioned by the SEC or any other Governmental Authority in connection with any violation of the securities laws. If the undersigned has been convicted of a crime or been sanctioned by the SEC for violation of the securities laws, the undersigned must provide complete details thereof in writing and attach such writing to this Subscription Agreement.

(v)    The undersigned agrees and acknowledges that his or her purchase of the Units is not a transaction, or any element of a series of transactions, that is part of a plan or scheme to evade the registration requirements of the Securities Act or any other applicable legal requirement. The undersigned agrees and acknowledges that the undersigned has complied with all applicable securities, currency exchange, and other laws, including but not limited to the laws of the country in which the undersigned is currently domiciled or the undersigned's country of citizenship, in connection with the undersigned's purchase of the Units, and including but not limited to obtaining any required consents from any Governmental Authority or any other consents or observing any other applicable legal formalities.

(w)    The undersigned agrees and acknowledges: (i) that his or her representations, warranties, covenants, acknowledgments, agreements and understandings

15

Initial 

herein and in any of the exhibits hereto are required in connection with the laws of the United States; (ii) the Investment Fund is relying on such representations, warranties, covenants, acknowledgments, agreements and understandings in determining the suitability of the undersigned to acquire such Units; and (iii) he or she has made such representations, warranties, covenants, acknowledgments, agreements with the intent that the Investment Fund rely on them in determining his or her suitability as an investor in the Investment Fund, and the undersigned hereby agrees that such representations, warranties, covenants, acknowledgments, agreements and understandings shall survive the undersigned's purchase of the Units.

(x)     If more than one person is signing this Subscription Agreement, each representation, warranty, covenant and acknowledgment made herein by or on behalf of the undersigned shall be a joint and several representation, warranty or undertaking of each such person.

(y)     The undersigned understands that he or she is admissible to the United States in accordance with Section 212 of the Immigration and Nationality Act.

8.     <u>Covenants of the Investment Fund</u>. The Investment Fund shall notify the undersigned in writing of the cancellation of the Offering or the rejection of this subscription within fourteen days after the occurrence of any such events.

9.     <u>Covenants of Subscriber</u>. The undersigned shall, or shall cause the undersigned's immigration counsel to, diligently prepare and submit to the USCIS a complete and accurate Form I-526E Petition, including, without limitation, any and all documents, records, and fees requested by the USCIS. The undersigned shall promptly notify the Investment Fund in writing of the filing of the undersigned's Form I-526E Petition, the USCIS's approval or denial of approval of the undersigned's Form I-526E Petition, the approval or denial of conditional permanent resident status, the filing of the undersigned's Form I-829 Petition, the USCIS's approval or denial of approval of the undersigned's Form I-829 Petition, and any change in the undersigned's address, which notice shall be accompanied by a copy of the Form I-526E Petition, the Form I-829 Petition, and the approval or denial letter (as the case may be) as well as any other documentation requested by the Investment Fund.

10.     <u>Transferability</u>. The undersigned agrees not to transfer or assign this subscription or any interest herein and further agrees that the assignment and transfer of the Units acquired pursuant hereto shall be effected only in accordance with the Operating Agreement and all applicable laws, including the US securities laws. The undersigned acknowledges that if he or she intends to petition for conditional or unconditional permanent resident status in the United States under the EB-5 Program, the restrictions on transferability will be subject to such program's requirements.

11.     <u>No Waiver of Rights</u>. Notwithstanding any of the representations, warranties, acknowledgements or agreements made herein by the undersigned, the undersigned does not thereby or in any other manner waive any right granted to the undersigned under federal or state securities laws.

16

Initial WJY

12.    <u>Indemnification</u>. The undersigned hereby covenants and agrees to indemnify and hold harmless the Investment Fund and any of its successors, assigns, agents, affiliates, managers, members, and employees, against any loss or cost (including, without limitation, attorneys' fees and required tax withholdings) incurred by any of them by reason of any misrepresentation or misstatement of material fact in connection with this Subscription Agreement or of any other document or information supplied by the undersigned to the Investment Fund in connection with the Offering.

13.    <u>Admission as Member</u>. The undersigned shall be admitted as a Member of the Investment Fund upon the satisfaction of all conditions described in "THE EB-5 IMMIGRATION PROGRAM — Conditions to Release of Funds" in the Memorandum. If the Investment Amount is returned to the undersigned pursuant to the terms hereof, the undersigned shall cease to be a Member of the Investment Fund and the undersigned shall have no interest in the Investment Fund.

14.    <u>Adoption of Operating Agreement</u>. The undersigned hereby agrees to be bound by the terms and provisions of the Operating Agreement as a Member.

15.    <u>Non-US Status</u>.

(a)    Unless otherwise indicated in the signature page hereto signed by the undersigned, the undersigned certifies that he or she is not a "US person" within the meaning of Rule 902(k) of Regulations S under the Securities Act and Section 7701(a)(30) of the US Internal Revenue Code of 1986, as amended (the "**Code**"). Because the undersigned is not a "US person," the undersigned acknowledges and agrees that the Investment Fund must withhold a tax equal to approximately 40% of the net income allocable to the undersigned. The undersigned acknowledges that, in general, a "US person" means a citizen or resident of the United States. In the event the undersigned becomes a "US person" under the Securities Act and/or the Code, the undersigned agrees to promptly notify the Investment Fund of such fact in writing and to promptly execute and deliver to the Investment Fund any documents or instruments deemed necessary by the Investment Fund to comply with applicable securities and/or tax laws.

(b)    If the undersigned has indicated in the signature page hereto signed by the undersigned, the undersigned hereby certifies that the undersigned is a US person for purposes of US income taxation; that the undersigned's US taxpayer identification number (social security number or employer identification number) has been issued by, and his or her home address is in, the United States; and if the undersigned who is presently a US person but subsequently becomes a non-US person, the undersigned will notify the Investment Fund within sixty days of becoming a non-US person. In the event the undersigned is no longer a "US person," the undersigned agrees to promptly notify the Investment Fund of such fact in writing and to promptly execute and deliver to the Investment Fund any documents or instruments deemed necessary by the Investment Fund to comply with applicable tax laws.

(c)    The undersigned understands and agrees that the foregoing certification of the undersigned may be disclosed to the Internal Revenue Service by the Investment Fund

17

Initial _WJ,Y_

and that any false statement made could be punishable by fine, imprisonment, or both.

16.    Miscellaneous.

(a)    This subscription shall be binding upon the undersigned's heirs, executors, administrators, successors and assigns.

(b)    All notices or other communications given or made hereunder shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Subscription Agreement or by facsimile transmission to the facsimile number set forth in this Subscription Agreement. Delivery of any notice shall be deemed made on the date of actual receipt if personally delivered. Any such notice sent by regular mail shall be deemed delivered ten days after the same is mailed. Notices delivered by a reputable overnight courier that guarantees next day delivery shall be deemed delivered two business days after delivery of the same to the courier. Notices transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is sufficient), provided a copy is also delivered via mail. A party may change its address for notice by notice to each other party given in accordance with this Section. The Investment Fund's facsimile number is +1-670-433-4329.

(c)    This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of New York, USA, without regard to the conflict of laws provisions thereof which would result in the application of the substantive laws of another state. Each of the parties hereto submits to personal jurisdiction in the State of New York for the enforcement of this Subscription Agreement and waives any and all personal rights to object to such jurisdiction with respect to any action or proceeding related to this Subscription Agreement.

(d)    This Subscription Agreement and all other agreements required to be delivered by the undersigned to the Investment Fund under the Memorandum constitute the entire agreement among the parties hereto with respect to the subject matter hereof and may be amended only by a writing executed by the parties. The representations and the indemnification obligations of the undersigned herein shall survive the acceptance of his or her subscription. In the event of conflict between the English-language version and any other translated version of this Subscription Agreement, the Memorandum, the Operating Agreement, and any other documents provided to the undersigned by the Investment Fund, the English-language version shall control.

18

Initial _____

**IN WITNESS WHEREOF**, the undersigned Subscriber has executed this Subscription Agreement for American Northern Marianas Economic Development Fund LLC, as of the date set forth below.

**SUBSCRIBER:**

Wei Tianyi

_____
[Social Security Number or ITIN Number] (if any)

_____
Print Exact Name of Subscriber

_____
Date of Subscriber's Execution

_____
Signature of Subscriber

*Total Subscription Payment*:

The Manor House, Jessups Estate, Nevis

$__USD800,000.00__

Principal Residential Street Address

Saint Kitts and Nevis

_____
Country of Residence

+1(869)-662-8805

_____
Telephone Number

345mudan@gmail.com

_____
Email Address

19

Initial 

**PARENT/GUARDIAN/CUSTODIAN:**

To the extent that the Subscriber who is funding subscription proceeds directly, is a minor child under applicable law (usually 18 years old), a signature of the Subscriber's Parent/Guardian/Custodian must accompany the signature of the minor in order to validate this Subscription Agreement.

The below Parent/Guardian/Custodian hereby acknowledges that, on behalf of the minor Subscriber, he or she certifies that he or she has read and understands the American Northern Marianas Economic Development Fund LLC Subscription Agreement and all other documents referenced therein, and approves the terms and conditions of all such documents referenced therein on behalf of said minor Subscriber and is signing this document as the Parent or authorized Guardian/Custodian of the minor Subscriber.

_____ (Custodian),     as     Parent/Guardian/Custodian    for
_____ (Subscriber) under the Delaware Uniform Transfers to
Minors Act.

_____          _____
Signature of Parent/Guardian/Custodian          Date of Execution

## PLEASE ATTACH PROOF OF RELATIONSHIP TO SUBSCRIBER

20

Initial 

## ACCEPTANCE

By signing below, the undersigned accepts the foregoing subscription for membership interests in American Northern Marianas Economic Development Fund LLC, in accordance with the terms hereof, for:

Subscriber Name:___ Wei Tianyi

**COMPANY**:

AMERICAN NORTHERN MARIANAS
ECONOMIC DEVELOPMENT FUND LLC

By:    American Northern Marianas Regional Center LLC, its Manager

By:    _____
       Erik F. Wang
       Managing Member

Dated: 3/14/2025

Initial _WTY_