# EXHIBIT B



**U.S. Citizenship and Immigration Services**
*Immigrant Investor Program*
131 M Street NE., Mailstop 2235
Washington, DC 20529

| | |
|---|---|
| **TO:** | **DATE:** October 29, 2024 |
| Erik Wang, | **Application:** Form I-956F |
| American Northern Marianas Regional Center | **File:** INF2260000946 |
| P.O. Box 520199 | |
| Tinian, MP 96952 | |

## DECISION

Your Form I-956F, Application for Approval of Investment in a Commercial Enterprise, filed by American Northern Marianas Regional Center, has been denied for the following reason(s):

**See Attachment**

If you desire to appeal this decision, or file a motion to reopen and/or reconsider, you may do so. Your notice of appeal or motion must be filed on Form I-290B, Notice of Appeal or Motion, within 33 calendar days of the date of this notice with the appropriate filing fee payable to U.S. Department of Homeland Security, with a check or money order from a bank or other institution located in the United States. If no appeal or motion is filed within the time allowed, this decision will be the final decision in this matter. **The appeal or motion may not be filed directly with the AAO.** Initial filing of the Form I-290B should be sent to:

| | | |
|---|---|---|
| USCIS | | USCIS Attn: I-290B |
| P.O. Box 660168 | | 2501 S. State Highway 121, Business Suite 400 |
| Dallas, TX 75266 | OR | Lewisville, TX 75067 |
| (For Postal Service Delivery) | | (For Express Mail/Courier) |

In support of your appeal, you may submit a brief and/or additional evidence, either with the initial filing or within 30 calendar days of the initial filing. If necessary, you may request additional time to submit a brief. Such request must also be made within 30 calendar days of filing. Note, however, that an extension of time to file the appeal may not be granted. Any brief, written statement, or other evidence not filed with Form I-290B, or any request for additional time for the submission of a brief or other material must be sent directly to the AAO at the following address:

U.S. Citizenship and Immigration Services

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 2

>Administrative Appeals Office
>5900 Capital Gateway Drive, MS 2090
>Camp Springs, MD 20588-0009

However, if you are filing a motion, any supplementary arguments or evidence **must be filed with the motion to reopen and/or reconsider**. No additional time will be permitted.

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO) at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.ombudsman.sba.gov or phone 202-205-2417 or fax 202-481-5719.

Sincerely,

*[signature: Alissa Emmel]*

Alissa L. Emmel
Chief Immigrant Investor Program


cc:  Samuel Newbold
     11 Times Square Floor 34
     New York, NY 10024

     Robert Divine
     Baker, Donelson, Bearman, Caldwell, Berkowitz
     633 Chestnut St.
     Chattanooga, TN 37450

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 3

**NOTICE OF DECISION**

**Form I-956F, Application for Approval of Investment in a Commercial Enterprise**
*American Northern Marianas Regional Center*

### I.     Determination of EB-5 Compliance for a Form I-956F

A regional center must file an I-956F application for each particular investment offering through an associated new commercial enterprise before any investor files a petition for classification under INA § 203(b)(5) by reason of investment in that offering. The approval of an application shall be binding for purposes of the adjudication of subsequent Forms I-526E, Immigrant Petition by Regional Center Investor, filed by immigrants investing in the same offering described in this I-956F application, and of petitions by the same immigrants filed under INA § 216A unless—

(I) the applicant engaged in fraud, misrepresentation, or criminal misuse;

(II) such approval would threaten public safety or national security;

(III) there has been a material change that affects eligibility;

(IV) the discovery of other evidence affecting program eligibility was not disclosed by the applicant during the adjudication process; or

(V) the previous adjudication involved a material mistake of law or fact.

On September 12, 2022, American Northern Marianas Regional Center ("the Regional Center") filed a Form I-956F to request approval of an investment in a commercial enterprise pursuant to section 203(b)(5)(F) of the Immigration and Nationality Act ("INA").

Through this Form I-956F, the Regional Center requests approval of an initial investment in a commercial enterprise. American Northern Marianas Economic Development Fund, the new commercial enterprise ("NCE"), proposes to pool $143.1 million from [226] immigrant investors.[1] The NCE will lend the entire amount to Bridge Investment Group, the job-creating entity ("JCE"), which will use the pooled investment to develop and operate a luxury resort located on Tinian Harbor on the Island of Tinian, CNMI. When fully developed, the Project will include an approximately 175,000 square foot, 300-room luxury resort hotel to be managed by Wyndham Hotels, with amenities such as a spa, dining, and retail space, a casino, and ferry service facilities.

---

[1] USCIS notes that, in response to the NOID, the applicant asserts that the amount of EB-5 capital required for the project significantly decreased from the initial estimate of $142,500,000 to actual expenditures of approximately $75,000,000 because the Project is now completed. The response to the NOID also states that $67.8 million in EB-5 funds have already been invested (127 investors * $500,000 + 1 investor * $900,000) and $2.4 million from 3 investors * $800,000) and 1 Pre-RIA subscription withdrawal for a total of 130 EB-5 investors.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 4

Based upon a review of the initial record of evidence, the Regional Center has not demonstrated that the Form I-956F meets the relevant requirements.

On March 15, 2024, USCIS issued a Notice of Intent to Deny (NOID) which identified deficiencies in the record with regard to the following relevant requirements:

- Comprehensive Business Plan
- Credible Economic Analysis
- Bona fides of persons involved with regional center program

On April 10, 2024, Applicant responded to the NOID with the submission of additional evidence. However, based on a review of the entire record of proceeding, USCIS concludes that the Applicant failed to establish eligibility for the benefit sought. Therefore, the petition is denied for the reasons discussed below.

### I.   Effect of Approval of a Business Plan for an Investment in a Regional Center's Commercial Enterprise

Pursuant to INA § 203(b)(5)(F)(ii), The approval of an application under this subparagraph, including an approval before the date of the enactment of this subparagraph, shall be binding for purposes of the adjudication of subsequent petitions seeking classification under this paragraph by immigrants investing in the same offering described in such application, and of petitions by the same immigrants filed under section 1186b of this title unless-

(I) the applicant engaged in fraud, misrepresentation, or criminal misuse;

(II) such approval would threaten public safety or national security;

(III) there has been a material change that affects eligibility;

(IV) the discovery of other evidence affecting program eligibility was not disclosed by the applicant during the adjudication process; or

(V) the previous adjudication involved a material mistake of law or fact.

USCIS previously approved a business plan associated with the NCE in this application. However, as discussed in the relevant analysis sections below, the prior approval is not binding because has been a material change that affects eligibility.

### II.   Analysis

#### A.   Business Plans for Regional Center Investments

##### 1. Comprehensive Business Plan

Pursuant to INA § 203(b)(5)(F)(i)(I), a regional center application for approval of an investment in a commercial enterprise must include a comprehensive business plan for a specific capital investment project.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 5

*Matter of Ho* explained that a comprehensive business plan must be sufficiently detailed to permit USCIS to draw reasonable inferences about job-creation potential. 22 I&N Dec. at 213. Additionally, *Matter of Ho* held that a "comprehensive business plan ... should contain, at a minimum, a description of the business, its products and/or services, and its objectives." Id. The decision further states:

> The plan should contain a market analysis, including the names of competing businesses and their relative strengths and weaknesses, a comparison of the competition's products and pricing structures, and a description of the target market/prospective customers of the new commercial enterprise. The plan should list the required permits and licenses obtained. If applicable, it should describe the manufacturing or production process, the materials required, and the supply sources. The plan should detail any contracts executed for the supply of materials and/or the distribution of products. It should discuss the marketing strategy of the business, including pricing, advertising, and servicing. The plan should set forth the business's organizational structure and its personnel's experience. It should explain the business's staffing requirements and contain a timetable for hiring, as well as job descriptions for all positions. It should contain sales, cost, and income projections and detail the bases therefor.[2] Most importantly, the business plan must be credible. *Id.*

The business plan failed to provide the details needed to support the underlying assertions made about the proposed project. Therefore, the Regional Center did not establish that the business plan is comprehensive or *Matter of Ho*-compliant.

USCIS issued a Notice of Intent to Deny (NOID on March 15, 2024 which noted a number of significant deficiencies with the Business Plan. The NOID Response included several exhibits averring to provide evidence in response to the issues identified in the NOID:

- Exhibit 1 - Tinian Project Business Plan Addendum, April 3, 2024;
- Exhibit 2 - Tinian Diamond Casino Grand Opening;
- Exhibit 3 - Tinian Mayor Edwin P. Aldan Congratulatory Letter;
- Exhibit 4 - Spectrum Gaming Group Casino in CNMI Feasibility Report 2018;
- Exhibit 5 - Tinian Casino Gaming Control Commission Notice of Public Meeting on December 22, 2023;
- Exhibit 6 - Marinas Visitor Authority Tourism Statistics, China National Tourism Administration, Marianas Visitor Authority marketing efforts;
- Exhibit 7 - US Military Awarded Contracts for Tinian;
- Exhibit 8 - JCE Sam.gov Registration Confirmation;

---

[2] USCIS recognizes that each business is different and will require different information in its business plan. These guidelines, therefore, are not all-inclusive.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 6

- Exhibit 9 - Griffin Logistics Signed Contract for Hotel Rooms;
- Exhibit 10 - Communication with U.S. Coast Guard on ferry certification;
- Exhibit 11 - Rural TEA Designation for Island of Tinian, CNMI;
- Exhibit 12 - American Northern Mariana Islands Economic Development Fund Private Placement Memorandum Update;
- Exhibit 13 - Vermilion Consulting Job Creation Report;
- Exhibit 14 - NCE Subscribers Intent to Withdraw Subscription;
- Exhibit 15 - JCE Employee I-9's;
- Exhibit 16 - Loan Agreement Between NCE and JCE and Promissory Notes from JCE for Repayment;
- Exhibit 17 - NCE - JP Morgan Chase - Checking Accounts;
- Exhibit 18 - NCE JP Morgan Chase - Savings Accounts;
- Exhibit 19 - ANMEDF (NCE) Pre RIA-Subscribers;
- Exhibit 20 - JCE Expenditure Summary Chart with Annotated Vendor List and Sample Expenditure;
- Exhibit 21 - JCE Consolidated Financial Statements and Independent Auditor's Report;
- Exhibit 22 - Silvia Siu Personal Statement;
- Exhibit 23 - XianJun Meng Personal Statement;
- Exhibit 24 - XianJun Meng and Silvia Siu Fund Transfer to JCE;
- Exhibit 25 - Meng & Siu Loan Agreement and Tinian Casino Gaming Control Commission Finding of Suitability;
- Exhibit 26 - Statement of Rose Masga;
- Exhibit 27 - Statement from Meng and Siu regarding I-956H Bona Fides; and
- Exhibit 29 - Consolidated Prior Exhibit Set That Was Submitted Responding to Previous Notice of Intent to Revoke I-526 and Notice.

Specifically, as noted in the NOID:

The 2014 Business Plan involved development and operation of the Tinian Ocean Resort and Casino, consisting of the development of a luxury 6-star, 150-room hotel, a mid-scale 3.5 star, a casino, and venue with seven restaurants, four retail stores, and inter-island ferry service at the Tinian Harbor, on the island of Tinian, within the CNMI. The casino was reported to provide a high-end gambling entertainment experience with 150 "Las Vegas-style" tables and 175 slot machines, and a total project cost of $150 million. However, Petitioner now asserts, ten years later,

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 7

that the Project has purportedly been built and completed in Q3, 2023, consisting of a 24-Key, 4 Star, Tinian Diamond Hotel and a 70-Key, 3 Star, Tinian Diamond Suites, Tinian Diamond Casino with 20 Electronic Gaming Machines and 6 Mass Gaming Tables and 1 VIP Table. A new restaurant, located within the Tinian Dimond Casino building was expected to open in May of 2024.

The NOID issued on March 15, 2024, raised a number of significant flaws with the business plans (all versions) which called into question the credibility of the business plans.

First, the NOID noted that there was scant evidence regarding expenditure for the renovation costs of the Tinian Diamond Hotel, Tinian Diamond Suites, Sand Diamond (the ferry), and ferry service. Second, the lack of significant progress and delays regarding the proposed development and opening schedules. Third, the consistent inability to meet project development timelines over a ten-year period. Fourth, the continuous construction timeline and schedule changes, notwithstanding, major shocks (typhoons and COVID) impacting the project, in the various versions of the Business Plans. Fifth, the NOID noted that none of the Business Plans addressed how the development of the Project would be affected by labor shortage on the island and how that might be overcome. Finally, the NOID pointed out that evidence in the record as well as the 2022 Business Plan did not present any information about the construction, construction firm, or the general contractor that built the Tinian Diamond Hotel. The record generally did not present detailed information about the costs for the Tinian Diamond Hotel, if it was renovated or newly constructed, who the contractor was that did the work, the construction contract for the general contractor, and if the same contractor is constructing the remaining project components.

In response to the NOID, Applicant has provided in pertinent part the following evidence:

*Credibility of Project Expenditures*

A letter from Erik Wang, manager of the Regional Center, dated April 4, 2024, included with the NOID Response, states that the construction of the Project was completed in Q3, 2023. In Addition, the Business Plan addendum dated April 3, 2024 (Exhibit 1) of the NOID response asserts that the total EB-5 Project investment (pre/post RIA) was $67.8 million, with total JCE spending of $75.3 million. With respect to evidence requested by USCIS previously (e.g., financial documents, records, receipts, invoices, etc.) the Regional Center manager further asserts "invoices and actual receipts were kept and stored only in hard copy up to October 2018 in the JCE Tinian office. A substantial amount of these archived files were destroyed or significantly damaged during Typhoon Yutu. Unfortunately, they were not kept as digital files, however the JCE implemented an accounting policy of digitizing records following Yutu. Subsequently, the JCE methodically went through previous bank statements and retrieving as much financial transaction documents as possible through email archives, requesting documentation from contracted vendors, etc. This information was also used by the JCE's certified public accountant, Burger Comer & Associates, to prepare the JCE's 2022 audited Consolidated Financial Statement and Independent Auditor's Report (Exhibit 21)." Within the independent auditor's report, signed **July 30, 2023**, the auditor makes the following statement regarding the JCE's financial condition:

> Management has elected to omit substantially all the disclosures and the statements of cash flows required by accounting principles generally accepted in the United States of America. If the omitted disclosures and the statement of cash flows were included in the financial statements, they might

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 8

influence the user's conclusions about the Company's financial position, results of operations, and cash flows.

However, the JCE's decision to withhold obviously relevant financial information from its auditor raises serious concerns with USCIS as to what the JCE wished to conceal.

In addition, despite the significant amount of EB-5 funds raised for this Project, the Project was not built as intended and detailed in the many business plans submitted to USCIS. For example, the Project as built today is a fraction of the intended project size, significantly behind the timelines detailed in the business plans, and yet cost nearly half as much as the original cost for the whole Project.

Furthermore, the NOID Response includes a statement of Xianjun Meng (Exhibit 23) containing a variety of contracts as evidence of renovation costs of Tinian Diamond Hotel, as well as statement from the JCE's accounting manager Rose Masga (Exhibit 26), which asserts to recalling that the $331,694.92 payment to XianJun Meng was for reimbursement of assorted business expenses from 2012-2015 he had paid personally. She further asserts that these transactional documents were stored at the JCE offices located in the Bank of Guam building on Tinian, but "All documents related to the reimbursement payment in question were destroyed" in the October 2018 typhoon. In fact, according to the manager of the Regional Center, "All invoices and receipts up to October 2018," were kept in hard copy form and nearly "all of these archived files were destroyed or significantly damaged during Typhoon Yutu." As a result, the Petitioner failed to provide substantive evidence (e.g., transaction invoices, receipts) to support Project assertions that these transactions involving JCE funds were for legitimate project purposes.

Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. at 165 (citing *Matter of Treasure Craft of California*, 14 I&N Dec. at 190). In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefit sought. See *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

As a result, Petitioner failed to provide credible documentation supporting expenditures already incurred.

### *Credibility of Project Timeline & Progress*

In response to the NOID, a letter from Erik Wang, manager of the Regional Center, dated April 4, 2024, asserts "the overall construction on Tinian Island in the Commonwealth of Northern Mariana Islands was completed in Q3 of 2023", indicating a total EB-5 Project investment (pre/post RIA) of $67.8 million, with total JCE spending (as of October 31, 2023) of $75.3 million. The record, however, failed to provide relevant, probative, or credible evidence to substantiate the detailed renovation costs of the 24-room Tinian Diamond Hotel, or the remainder of the construction costs associated with the Project which has been purportedly completed. In the 2018 Business Plan, the Petitioner asserts that Phase I of the Project will cost approximately $10.7 million to develop. However, the Petitioner failed to discuss this discrepancy between the $10.7 million Phase I Project cost and the purported JCE spending (as of October 31, 2023) of $75.3 million.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 9

Furthermore, the Project's continued delays and extensions have eroded credibility of the development timeline and the business plan. Over the last ten years, multiple updates to the NCE's project business plan have been submitted to USCIS with several Form I-526 filings.

The initial business plan, dated September 2014 ("Original Business Plan"), was provided with the Regional Center's Form I-924. The Original Business Plan describes the construction and operation of a 300-room luxury hotel and casino with retail and restaurants called the Tinian Ocean View Resort and Casino. Under that plan, total project cost was $67.0 million and, fully subscribed, 124 EB-5 investors would provide $62.0 million in capital contributions. In addition, a Project Business Plan – 3rd Addendum ("2022 Business Plan"), dated June 2022 was submitted in separate Form I-956F filings, and became part of the Project record. The 2022 Business Plan was substantially similar to the 2020 Business Plan, with some additional updates to include introduction of the Tinian Diamond Suites (36 suites, with 2 bedrooms each), and the water treatment plant, as well as details regarding the Project (Sand Diamond) ferry. Like the 2020 Business Plan, no capital stack details were provided in the 2022 Business Plan and timeline delays were reported.

The material change in the Project business plans, the inability to meet development timelines, a lack of project progress, failure to deliver the inter-island ferry into service, and development/construction activities which (when they have occurred) only appear to be a fraction of what was initially planned and a divergence in form and substance from previous representations. The Project has not been built as stated in the business plans. For example, Petitioner asserts in the 2022 Business Plan that the design for the Project has changed yet again. Three 10- to 12-story towers (in the original design through the time of the 2020 Business Plan) were replaced by three 3-floor towers and one 4-floor tower connected to a central area in the latest business plan iteration. Included in the NOID response, the Business Plan addendum dated April 3, 2024, states:

> "Today, the Project consists of two hotels and a casino. All elements are operational. The Tinian Diamond Hotel has 24 keyed rooms, and the Tinian Diamond Suites has 70 keyed rooms. Most of the rooms are designed as suites, so that they may be rented as a suite or separate rooms. The Tinian Diamond Casino is a 8,000 square foot operational casino.
>
> Originally, the JCE anticipated developing a ferry terminal. This project element was also delayed and has shifted to meet business and regulatory needs. The JCE created a separate operating company, APSI, to undertake ferry operations. For liability reasons, APSI has entered into a lease agreement for the ferry. Currently, the ferry operation is waiting for Coast Guard certification".

The numerous project business plans submitted to USCIS demonstrate project development timeline failures and limited construction activities. It was learned that the Tinian Diamond Hotel had reportedly been a former 2-story apartment building which the JCE purchased and converted into hotel space. A third floor was added to the existing structure, which the record indicates has 17-hotel rooms. The first floor of the building appears to now be used as office suite space for the JCE. In addition, the 35, 2-room suite Tinian Diamond Suites appear to be prefabricated steel structures – built elsewhere and shipped to the site (not clear where from) – where they are assembled and finished. The apartment building renovation into a hotel (Tinian Diamond Hotel), prefabricated steel structures built elsewhere (Tinian Diamond Suites), and construction of the JCE offices were details left out of the project business

plans – negatively affecting the economic methodology as well. This information was confirmed by USCIS Officers during their May 11, 2022 Project site visit.

In the *Matter of Ho* precedent decision, perhaps the single most important attribute for a business plan is that it **must be credible.** As USCIS has maintained, the prolonged inability to meet development timelines, lack of project progress, and construction activity (when it has occurred) signifying a fraction of what was initially planned and representing a divergence in form and substance from previous representations to USCIS regarding what would be constructed renders the business plan no longer credible or valid.

In addition, included in the NOID response evidence of the casino opening (Exhibit 2), letters of support from the Tinian Mayor (Exhibits 2 and 29 – (54)), and the hotel ribbon cutting/opening (Exhibit 29 – (33)). None of the evidence submitted, however, meaningfully addresses the lingering business plan deficiencies. Namely, nearly ten years later, the prolonged inability to meet development timelines, a lack of project progress, and construction activity (when it has occurred) only signifying a fraction of what was initially planned – representing a divergence in form and substance from previous representations to USCIS regarding what would be constructed.

After announcing the development of a 385,000 square foot project, including a casino with 150 "Las Vegas" style tables and 175 slot machines (2014 Business Plan), the Tinian Diamond Casino had its grand opening on November 29, 2023. The record indicates that casino gaming operations include 7 tables, and, after a December 22, 2023 Tinian Casino Gaming Control Commission meeting, 18 slot machines (Exhibit 5). Not only did the Project fail to deliver the casino as envisioned in the 2014 Business Plan, but targets in the business plans from 2018, 2020, and 2022 also failed to be realized.

There is also the failure to deliver the project ferry into operation. According to the Business Plan addendum dated April 3, 2024, the (Sand Diamond) ferry is currently not operational because the Coast Gard certification is still pending. As of the date of this correspondence, USCIS has been unable to find publicly available information that the interisland project ferry is operational in the CNMI. During a recent open-source search of the Northern Mariana Islands, it was noted that "Outside of the airliner and commuter flights, charter boat trips are needed to get around the islands."[3] Furthermore, in the 2022 Business Plan, it was intimated that the Sand Diamond Ferry was part of the Project. USICS discovered information confirming that the Sand Diamond was built in China. As part of the NOID Response, USCIS notes that the ferry is no longer part of the Project.

As a result of the deficiencies detailed above, Petitioner has failed to credibly demonstrate by the preponderance of the evidence that the business plan is *Matter of Ho*-compliant such that the new commercial enterprise will create the requisite number of jobs in compliance with the EB-5 program. Consequently, Petitioner has not demonstrated by a preponderance of the evidence that the Business Plan is both comprehensive and credible.

---

[3] Northern Mariana Islands; https://en.wikipedia.org/wiki/Northern_Mariana_Islands; last edited on February 18, 2024 (last accessed October 2, 2024).

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 11

### 2. Credible Economic Analysis

Pursuant to INA § 203(b)(5)(F)(i)(II), a regional center application for approval of an investment in a commercial enterprise must include a credible economic analysis regarding estimated job creation that is based upon economically and statistically valid and transparent methodologies.

INA § 203(b)(5)(E)(iv)(I) permits aliens seeking admission to satisfy only up to 90 percent of the job creation requirement with jobs that are estimated to be created indirectly through investment. An employee of the new commercial enterprise or job-creating entity may be considered to hold a job that has been directly created.

If the jobs estimated to be created are created by construction activity lasting less than 2 years, Applicants may satisfy only up to 75 percent of the job creation requirement with jobs that are estimated to be created indirectly through investment. INA § 203(b)(5)(E)(iv)(II). If the number of direct jobs estimated to be created has been determined by an economically and statistically valid methodology, and such direct jobs are created by construction activity lasting less than 2 years, the number of such jobs that may be considered direct jobs for purposes of clause (iv) shall be calculated by multiplying the total number of such jobs estimated to be created by the fraction of the 2-year period that the construction activity lasts. INA § 203(b)(5)(E)(v)(II)(cc).

In determining compliance with the job creation requirement, the Secretary of Homeland Security may include jobs estimated to be created under a methodology that attributes jobs to prospective tenants occupying commercial real estate created or improved by capital investments if the number of such jobs estimated to be created has been determined by an economically and statistically valid methodology and such jobs are not existing jobs that have been relocated. INA § 203(b)(5)(E)(v)(II)(aa).

The existing record contains the following:

- Economic Impact Analysis 2014;
- Economic Impact Analysis 2018;
- Economic Impact Analysis 2024.

The evidence in the record failed to demonstrate that the requisite number of jobs will be created using economically and statistically valid and transparent methodologies.

The economic model used by the Regional Center to demonstrate job creation is RIMS II.

The evidence in the record fails to demonstrate that the requisite number of jobs will be created using economically and statistically valid and transparent methodologies. As mentioned in the "Comprehensive Business Plan" section, USCIS has determined that the business plan is not comprehensive and credible. Therefore, the economic methodology is not reasonable because the specific job creating information used from the business plan as a basis to support the inputs into the economic model are not credible for demonstrating that the requisite number of jobs would be created.

Furthermore, the Economic Impact Analyses, which purport to demonstrate job creation, do not appear to reflect the reality of the CMNI construction or hospitality labor force. USCIS maintains that foreign employees (rather

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 12

than qualifying employees) and foreign construction materials are being used for project job creation purposes. In fact, recent articles allude to the hiring difficulties currently experienced by the Project.[4, 5] USCIS also conducted an open-source search to confirm recent project activity.[6] An article by the Focus Gaming News Asia Pacific, dated April 13, 2023, reported that the JCE "is struggling to find staff for the newly constructed Tinian Diamond Casino." Further, the Mayor of Tinian, Edwin P. Aldin, admitted that there existed a "lack of interest in positions at the venue," but said that he remains optimistic.

Lastly, the NOID noted that in all instances of the proposed model for CNMI developed by Evans, adjustments should have been made in order to ensure that the forecasted jobs impact (direct, indirect, and induced) are not overestimated.[7] In fact, the model as developed by Evans, purports to use Hawaiian data in place of data that was not available for CNMI, implying further adjustments given the differences in the make-up of the economic capacities of the several islands. This does not seem to have been taken into account given the peculiarities of developing such a project in an isolated location nor does the NOID Response directly address these issues and shortcomings.

Based on the record of evidence Petitioner has failed to demonstrate, by a preponderance of the evidence, that job creation will occur as proposed. The hiring of foreign workers rather than qualifying employees, and sourcing materials from foreign countries, does not meet Program requirements and would constitute a material change.

Please note that "[a] petitioner must establish eligibility at the time of filing; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts. *See Matter of Katigbak*, 14 I&N Dec. 45, 49 (Comm. 1971). Therefore, a petitioner may not make material changes to a petition that has already been filed in an effort to make an apparently deficient petition conform to [USCIS] requirements." *Matter of Izummi*, 22 I&N Dec. 169, 175 (Assoc. Comm'r 1998); *see also* 8 C.F.R. § 103.2(b)(1).

### B. Bona fides of Persons involved with Regional Center Program

INA § 203(b)(5)(H)(iii) provides that the Secretary of Homeland Security shall require attestations and information from persons involved with a new commercial enterprise, and any affiliated job-creating entity to determine whether such entities are in compliance with INA §§ 203(b)(5)(H)(i) and (ii).

All persons involved with the New Commercial Enterprise, and affiliated Job-creating entity must submit Form I-956H, Bona Fides of Persons Involved with Regional Center Program, to provide information and attest to their compliance with INA §§ 203(b)(5)(H)(i) and (ii). Form I-956H must be properly submitted according to instructions provided on the USCIS website. A person involved with the regional center who previously filed Form I-956H with

---

[4] Marianas Variety; "Lack of job applicants, tourists delays Tinian casino opening;" https://www.mvariety.com/news/lack-of-job-applicants-tourists-delays-tinian-casino-opening/article_72e8ab3c-d917-11ed-b86c-bf341e0eff37.html ; dated April 13, 2023. Last accessed October 3, 2024.
[5] Focus Gaming News Asia Pacific; "Tinian Diamond Casino opening further delayed by hiring difficulties;" https://focusgn.com/asia-pacific/tinian-diamond-casino-opening-further-delayed-by-hiring-difficulties; dated April 13, 2023.
[6] Ibid, last accessed October 3, 2024.
[7] USCIS noted the various instances where the RIMS II User Guide recommends adjustment to results.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 13

the Form I-956 must file a separate Form I-956H with the Form I-956F if that person is also involved with the NCE or affiliated JCE.

Under INA § 203(b)(5)(H)(v), a person is involved with a regional center, a new commercial enterprise, and affiliated job-creating entity, as applicable, if the person is, directly or indirectly, in a position of substantive authority to make operational or managerial decisions over pooling, securitization, investment, release, acceptance or control or use of any funding. A person may be in a position of substantive authority if they serve as a principal, a representative, an administrator, an owner, an officer, a board member, a manager, an executive, a general partner, a fiduciary, an agent or in a similar position at the regional center, new commercial enterprise, or job-creating entity, respectively.

To support its request, the Regional Center submitted the following evidence:

- Joint Statement from Meng and Siu regarding I-956H Bona Fides (Exhibit 27)

After reviewing the submitted evidence, USCIS has determined that the Regional Center failed to sufficiently identify all persons involved with the new commercial enterprise, and the affiliated job-creating entity and/or that all persons involved with the new commercial enterprise, and any affiliated job-creating entity meet the requirements of INA §§ 203(b)(5)(H)(i) and (ii).

In their joint statements, Applicants, XianJun Meng and Silvia Siu assert that they have missed both biometrics appointments because they have moved back to Hong Kong and do not live in New York. They further assert that, they sought for alternative possibilities and obtained fingerprints from Beijing Tongda Shoucheng Institute of Forensic since they believe the biometrics taken from this authority is recognized by FBI and US Consulates in China.

However, the biometrics appointments were mailed to the address that was provided in the Applicants' Form I-956H. USCIS receives a change of address or rescheduling request that it concludes warrants excusing the failure to appear. There is no evidence in the record that demonstrates that USCIS received a change of address or a request to reschedule from either XianJun Meng or Silvia Siu. In visa petition proceedings, the petitioner bears the burden of establishing eligibility for the benefit sought. See *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

### III.   Conclusion

8 C.F.R. § 103.2(b)(1) requires an applicant to "establish that he or she is eligible for the requested benefit." USCIS has determined that the record submitted does not establish eligibility for request(s) the Regional Center is seeking under INA § 203(b)(5)(F).

If the Regional Center disagrees with this decision, or if the Regional Center has additional evidence that shows this decision is incorrect, the Regional Center may file a motion or an appeal to this decision by filing a completed Form I-290B, Notice of Appeal or Motion, along with the appropriate filing fee. The Regional Center may also include a brief or other written statement and additional evidence in support of the motion or appeal. The Form I-290B must be filed within 33 days from the date of this notice. If a motion or appeal is not filed within 33 days, this decision is final.

American Northern Marianas Regional Center / INF2260000946 / ID1226950769
Page 14

The Regional Center must send the completed Form I-290B and supporting documentation with the appropriate filing fee to:

> USCIS I-290B
> P.O. Box 660168
> Dallas, TX 75266

For an appeal, the Regional Center may request additional time to submit a brief within 30 calendar days of filing the appeal. Any brief, written statement, or evidence in support of an appeal that is not filed with Form I-290B must be directly sent within 30 days of filing the appeal to:

> U.S. Citizenship and Immigration Services
> Administrative Appeals Office
> 5900 Capital Gateway Drive, MS 2090
> Camp Springs, MD 20588-0009

For more information about the filing requirements for appeals and motions, please see 8 C.F.R. § 103.3 or 103.5, or visit the USCIS website at www.uscis.gov.